United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AKIVA ISRAEL,
Plaintiff,
v.
S. TOMLISON, et al.,
Defendants.

Case No. 24-cv-03718-JD

**ORDER RE SUMMARY JUDGMENT**

Re: Dkt. Nos. 61, 97, 101, 103, 104, 105, 106

Pro se plaintiff Akiva Israel, a state prisoner, filed a civil rights action under 42 U.S.C. § 1983. She alleges that defendant Tomlinson, a prison librarian, denied her photocopies of legal documents and banned her from the law library without cause. Tomlinson filed a motion for summary judgment on the grounds that Israel was not retaliated against for engaging in protected activity, and on qualified immunity. Israel filed an opposition and a supplemental opposition after additional discovery was provided. Tomlinson filed a reply. Summary judgment is denied.

**BACKGROUND**

From September through December 2023, Salinas Valley State Prison ("SVSP") experienced staffing shortages and all four of the libraries at the prison were managed by only one librarian, namely Tomlinson. Dkt. No. 61-1, Tomlinson Decl. ¶ 3. Tomlinson was also responsible for assisting with library services in the Correctional Treatment Center and psychiatric inpatient units, processing institutional mail, cataloguing books, reviewing articles, and providing bedside and cell-front service to inmates who could not physically go to the library. *Id*. The libraries operated only as resources were available and were open one day per week. *Id*. ¶ 4.

The Facility A library was open on Tuesdays. *Id*. On November 14, 2023, Israel was at the law library in Facility A and requested copies of 540 pages of legal paperwork. Dkt. No. 61-3,

Hutslar Decl., Deposition at 21, 33; Dkt. No. 61-1, Tomlinson Decl. ¶ 6. Tomlinson was working at the library and processing various requests for four inmates, including Israel. Dkt. No. 61-1, Tomlinson Decl. ¶ 5.

State regulations limit legal copies to 50 pages, "except when necessary to advance litigation." *Id.* ¶ 7; Cal. Code Regs. Tit. 15 § 3162(b). If an inmate needs to exceed that limit, they must provide the librarian with "a written explanation of the need for the excess." *Id.* Prison regulations allow the librarian to summarily deny any excess-copy request that does not include a reasonable explanation. Dkt. No. 61-1, Tomlinson Decl. ¶ 7, Ex. A section 101120.15.

Tomlinson denied the copy request because it was well over the limit and Israel did not provide a reasonable explanation for the need for the excessive copies. Dkt. No. 61-1,Tomlinson Decl. ¶ 8; Dkt. No. 61-3, Hutslar Decl., Deposition at 23. Israel disputes this and says that Tomlinson told her that copying is limited to 50 pages no matter what, with no exceptions. Dkt. No. 80-1 at 2. Israel told Tomlinson that she was going to file a grievance against her and take her to court for refusing to make copies. Dkt. No. 61-3, Hutslar Decl., Deposition at 100, 111-12.

According to Israel, Tomlinson said that Israel's prior grievances had caused problems and that she was creating more problems and would be banned from the law library. Dkt. No. 80 at 2; Dkt. No. 80-1 at 2. Tomlinson then activated her personal alarm, causing Israel and all other inmates to be removed from the library. Dkt. No. 80 at 2. Israel also states that Tomlinson used racial slurs against her. *Id.*

Tomlinson says that she did not retaliate against Israel and typically was not aware of grievances unless the Office of Grievances interviewed her about an issue. Dkt. No. 61-1, Tomlinson Decl. ¶ 11.

Israel filed a grievance regarding this incident. Dkt. No. 61-2, Lyons Decl., Ex. C at 4. The grievance was granted and Israel received the copies of the legal paperwork. *Id.* at 16-17; Dkt. No. 61-3, Hutslar Decl., Deposition at 43.

Tomlinson submitted a worker's compensation claim the day after this interaction with Israel, which she attributed to the stress of managing all the libraries on her own and the interactions with Israel. Dkt. No. 61-1, Tomlinson Decl. ¶ 12. Tomlinson was unable to work

from mid-November through mid-December 2023. *Id*. All the libraries at SVSP were closed from November 15, 2023, to December 18, 2023, until the new librarian in training was able to work. *Id*.; Dkt. No. 61-2, Lyons Decl., Ex. D at 17. All inmates at SVSP were not permitted to use the library during this time. Dkt. No. 61-2, Lyons Decl., Ex. D at 17. Library logs from this period show that Israel visited the library nearly every Tuesday it was open and when it was reopened: September 12, 19, and 26; October 3, 10, 17, and 24; November 14; and December 21. Dkt. No. 61-1, Tomlinson Decl. Ex. B.

**LEGAL STANDARDS**

Summary judgment is available where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are facts that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id*.

The Court may grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id*. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id*. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the Court will view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court will assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or

weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such

that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id*.

**DISCUSSION**

In considering whether a defendant is entitled to qualified immunity for retaliation, it is improper to consider the harm eventually caused by the official's conduct. *Rhodes*, 408 F.3d at 569-70. The qualified immunity inquiry must focus on the time of the conduct—i.e., whether the official's acts were reasonable in light of the information they possessed at the time they acted—rather than its aftermath and effect because no official can observe whether their retaliation has successfully chilled a prisoner's rights until long after deciding to act. *Id*. at 570.

Israel alleges that she was subject to retaliation when Tomlinson denied her request to copy the legal work due to prior grievances and then banned her from the law library for threatening to file a new grievance and lawsuit. Tomlinson disputes these vital facts and maintains that the copying was denied due to the page amount and the expulsion from the library was for being disruptive.

Tomlinson argues that there is no authority clearly establishing that a librarian retaliates against an inmate when denying a copy request when they determine the request does not comply with existing policy and regulations. Dkt. No. 61 at 16. Tomlinson further contends that because she believed she was acting pursuant to a legitimate correctional goal, qualified immunity applies. *Id*. Tomlinson's argument would be well taken if it was undisputed that she denied the request and banned Israel from the library because Israel's request did not comply with existing regulations and she was being disruptive. Yet, the reasoning for Tomlinson's actions and what was stated during the exchange between the parties is disputed and the vital issue in this case.

Viewing the evidence in the light most favorable to Israel, as the nonmoving party, the Court finds that Tomlinson is not entitled to qualified immunity. In 1989, *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989), clearly established "that it is unlawful for the government to deliberately retaliate against a citizen for exercising his right to comment on (and

publicly) criticize government officials' actions and his right to access the courts and administrative appeals process for redress of grievances." *CarePartners v. Lashway*, 545 F.3d 867, 882 (9th Cir. 2008). Later, *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003), clearly established that a government official may not use an otherwise valid procedure as a ruse or a cover to silence and punish an inmate. Nor may officials retaliate against a prisoner for making threats to sue. *See Entler v. Gregoire*, 872 F.3d 1031, 1034, 1038-40 (9th Cir. 2017).

Israel's right to freely exercise her First Amendment rights without retaliation was clearly established such that it was sufficiently clear at the time of this incident so that every reasonable official would have understood that denying a copy request due to a prior grievance or banning an inmate from the library for threatening to file a grievance and a lawsuit would violate the inmate's rights. As to whether Tomlinson's actions were reasonable, "[i]f there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).

Viewing the evidence in the light most favorable to Israel, it would have been clear that Tomlinson's actions would violate the First Amendment despite the possible legitimate correctional goals. *See Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1143 (N.D. Cal. 2015) ("Here, because there is a genuine issue of material fact as to retaliatory motive, defendants cannot rely on the prison's legitimate penological interest in prison security to succeed on their motion for summary judgment."); *Kilgore v. Clavijo*, 2024 WL 2818858, at *24 (N.D. Cal. June 3, 2024) ("The fact that cell searches can serve legitimate penological objectives does not mean that cell searches are never retaliatory, especially where there is significant evidence supporting a finding of retaliatory intent."). Due to the disputed facts in this case, Tomlinson is not entitled to qualified immunity, and summary judgment is denied.

**Referral to Pro Se Prisoner Mediation Program**

This case is referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program. Judge Illman will set a schedule for the mediation as his calendar permits. The parties will file a joint status report after the conclusion of

the mediation.

Israel will attend the mediation in person or by video or telephone, in Judge Illman's discretion. Israel is advised that she may be sanctioned for failure to comply with an order to participate in a mediation or settlement conference, and such sanctions may include dismissal of part or all of the action. *See* Fed. R. Civ. P. 16(a), (f), and 41(b).

**CONCLUSION**

1. Israel's motions to submit a supplemental opposition (Dkt. No. 97), a sur-reply (Dkt. No. 106) and to use discovery (Dkt. Nos. 101, 103, 104) are granted and the Court has considered the filings.

2. Tomlinson's motion for summary judgment (Dkt. No. 61) is denied.

3. Tomlinson's motion to seal exhibits filed by Israel (Dkt. No. 105) is granted. The exhibits were subject to the Court's protective order, Israel erred in filing them, and Israel has no objection to sealing the exhibits. The Clerk is requested to seal Exhibit M at 2-175 in Dkt. No. 99, Exhibit M at 1-60 in Dkt. No. 100, Exhibit M at 1-60 in Dkt. No. 100-1, Exhibit M at 1-60 in Dkt. No. 100-2, and Exhibit M at 1-31 in Dkt. No. 100-3.

4. This action is referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program. The Clerk is requested to send this order to Magistrate Judge Illman. This case is stayed until further order from the Court.

**IT IS SO ORDERED.**

Dated: September 25, 2026

JAMES DONATO
United States District Judge